IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ROBERT P. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-0130-CV-W-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

The issues raised in this case make it unnecessary to chronicle the entirety of Plaintiff's medical history. The following summary will suffice.

Plaintiff was born in December 1962 and completed the tenth grade; he alleged he became disabled on February 1, 2004 (the date he last engaged in substantial gainful activity) due to a combination of obesity, sleep apnea, COPD, and the effects of diabetes mellitus (Type II). His application sought disability benefits pursuant to Title II, and his insured status under this program expired on December 31, 2009.

A detailed recounting of Plaintiff's medical history is not necessary to resolve the legal arguments raised on appeal. It is sufficient to note that the ALJ found Plaintiff suffered from the following severe impairments: morbid obesity, diabetes mellitus (Type II), obstructive sleep apnea, and mild chronic obstructive pulmonary disease. Plaintiff reported suffering from vision loss and macular degeneration, but the ALJ found these

ailments were "not medically determinable impairments since there are no objective medical records in evidence dated within the period being adjudicated to support this alleged impairment." R. at 163. Plaintiff also reported difficulties with his left knee but the ALJ did not specifically mention Plaintiff's knee when recounting Plaintiff's ailments.

The ALJ found Plaintiff retained the residual functional capacity ("RFC") to lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand or walk for six hours per day, had no limitations on his ability to sit, could not climb, work with heights or extreme temperatures, and needed to avoid dust, fumes, and other irritants. R. at 164. The ALJ reached this conclusion after evaluating the evidence, which included testimony from Plaintiff and his wife, medical records, and the testimony of a medical expert, Dr. Eric Puestow. Plaintiff testified he could walk only three hundred feet, could stand for ten to fifteen minutes, and sit for an unlimited amount of time. The ALJ discounted this testimony because this degree of limitation was inconsistent with the medical evidence and no treating or examining physician suggested Plaintiff was as limited as he described. Based on testimony from a vocational expert ("VE"), the ALJ found Plaintiff could work as a kitchen helper, cook's helper, or patient transporter. R. at 166-67.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might

2

accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

## A. Assessment of Lay Witnesses

Plaintiff argues the Commissioner's decision should be reversed because of errors related to two lay witnesses. The first is K. Elkins, the individual at the Field Office who interviewed Plaintiff on April 16, 2010 – one week after Plaintiff filed his claim for benefits. Elkins wrote the following observations about Plaintiff: "When reading he had to put paper real close to his face to read, even with his glasses on. I had to point twice where to sign. Slow to stand & appeared to be painful – took him several steps and groaned when he stood and started walking. . . . Slow to stand & obvious was in pain when he stood and started walking." R. at 308.

Plaintiff faults the ALJ for not considering this evidence.[1] First, the argument arises from a flawed premise. The fact that the ALJ did not specifically mention a particular piece of evidence does not inevitably mean the evidence was not considered. Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000). Second, half of Elkins' observations relate to Plaintiff's eyesight, which is a condition that the medical records suggest developed in 2010 at the earliest – in other words, after the relevant time period. Finally, and most importantly, Elkins' observations are duplicative of those expressed by Plaintiff and Plaintiff's wife, and the ALJ's reasons for discounting testimony from Plaintiff and his wife also apply to Elkins. Under these circumstances, the Eighth Circuit has held that reversal is not required. Buckner v. Astrue, 646 F.3d 549, 559-60 (8th Cir. 2011). The Court concludes the ALJ's failure to specifically mention Elkins' observations does not affect the validity of the Commissioner's final decision.

The second lay witness at issue is Plaintiff's wife. The ALJ summarized her testimony thusly: she "[s]tated she had witness[ed] his physical condition deteriorate.

---

[1]To be fair, the ALJ's attention was not directed to this evidence. It seems that if Plaintiff's counsel (who represented Plaintiff at the hearing) thought this evidence was useful or critical, she should have drawn the ALJ's attention to it instead of waiting until an adverse decision was issued to raise the point.

3

He was active in the past, but there were many things he could no longer do. She helped cut his hair, ties his shoes and put[ ] on overalls." The ALJ found her testimony to be partially credible, explaining that "[s]he is not a medical practitioner and her observations of the claimant are based primarily on what he presents to her." R. at 165. Plaintiff faults the ALJ for mentioning that Plaintiff's wife was not a medical practitioner and suggests the ALJ declined to fully credit her testimony solely because she was not a medical practitioner. Viewed in context, this not what the ALJ did. The ALJ defined the nature of her observations and noted they were entirely dependent on what Plaintiff himself related – thus, her testimony was only as strong as Plaintiff's and was subject to the same credibility concerns. Cf. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). The ALJ's decision to point out that Plaintiff's wife's testimony was that of a lay person and not a medical professional was not reversible error.

### B.  Failure to Develop the Record

Plaintiff contends that Dr. Peustow's testimony triggered a duty for the ALJ to develop the Record with respect to Plaintiff's eyesight and knees. Starting first with the issue of Plaintiff's eyesight, the Court agrees that Dr. Peustow indicated the Record is not clear as to the precise nature of Plaintiff's vision problems. However, there was no duty to further develop the Record to ascertain the nature of those problems because whatever those problems were they arose in 2010 – after Plaintiff's insured status expired. Plaintiff may be able to seek supplemental security income benefits under Title XVI based on his vision problems, but those problems did not arise while Plaintiff was insured under Title II.

With respect to Plaintiff's knee, Dr. Peustow initially noted Plaintiff had "internal derangement of the left knee, and has undergone arthoscopy. We don't have any recent decent examination of the knees, and no recent imaging studies." R. at 199. Upon further questioning, Dr. Peustow testified that the knee was related to Plaintiff's obesity and described certain tests that he would have performed if he were examining the Plaintiff. R. at 201.

To place matters in context: Plaintiff had knee problems as a child and underwent knee surgery before he quit working. R. at 181. The fact that he continued working after the knee surgery indicates his knee problem was not automatically disabling, at least at that time. He testified he last obtained treatment for his knees in August 2004[2] at Research Medical Center, R. at 182, but the records from the visit relate to his heart and not his knee. R. at 574-94. Thus, if Plaintiff is to be believed he never sought treatment from 2004 through the date of the hearing in July 2011 – and in reality, there is no evidence Plaintiff sought treatment for knee problems after his surgery. The ALJ found Plaintiff's "allegations of knee pain are credible due to his history of surgery and obesity" but the "allegations of disabling limitations are not supported by the medical record as indicated by the testimony of the medical expert." R. at 165.

The ALJ has a duty to develop the Record, and the failure to do so is reversible when the Record "does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." Byes v. Astrue, 687 F.3d 913, 916 (8th Cir. 2012). "However, the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant." Eichelberger v. Barnhart, 390 F.3d 584, 592 (8th Cir. 2004). Moreover, if the Record provides substantial evidence to support the ALJ's determination, the decision should be affirmed. Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) (quoting Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994)).

Here, viewing the statements in context, the ALJ found Plaintiff suffered from knee pain but there was no medical evidence suggesting it was as debilitating as Plaintiff testified – primarily because Plaintiff never sought treatment. The question then becomes whether the ALJ could consider Plaintiff's failure to obtain medical treatment as evidence of the severity of Plaintiff's knee pain or whether the ALJ was obligated to obtain a consultative examination. Mindful that a claimant's failure to seek treatment is itself evidence to be considered in evaluating a claimant's credibility, the Court concludes the ALJ was not required to obtain a consultative examination. This is not a case in which the ALJ failed to obtain all the evidence available from treating

---

[2]Plaintiff last engaged in substantial gainful activity in February 2004, so the surgery must have taken place before that date.

physicians. This is also not a case in which there was confusion over the opinions offered by treating physicians. This is a case in which a claimant asserts a debilitating condition that allegedly existed for years but for which he did not seek treatment while he did seek treatment for other conditions. The ALJ was entitled to conclude Plaintiff's knee problem was not disabling, notwithstanding the tests Dr. Peustow would have performed.[3]

### C. Assessment of Plaintiff's Credbitility

Plaintiff's third argument contends the ALJ erred in failing to properly assess his credibility. He focuses on the ALJ's statement that Plaintiff's "subjective allegations of disabling limitations are not supported by the medical record as indicated by the testimony of the medical expert." R. at 165. From this, Plaintiff concludes the ALJ failed to consider all the factors required by the Eighth Circuit's decision in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted). It is true the ALJ did not cite Polaski, but he cited Social Security Regulations and Social Security Rulings that mirror the Polaski factors.[4]

As Plaintiff indicates, the ALJ noted the inconsistencies between the medical records and Plaintiff's testimony. As discussed in the preceding section, the ALJ also alluded to the absence of medical records (which indicates a failure to seek treatment). The ALJ also noted that no treating physicians had imposed functional restrictions. All of these factors are specified as proper under Polaski. The ALJ is not required to

---

[3]Interestingly, medical records from June 2011 – approximately eighteen months after Plaintiff's insured status expired – reflect no problems with Plaintiff's ability to stand or walk and no problems with Plaintiff's knee. It is also worth noting that in response to a hypothetical incorporating a more limited RFC – one that restricted Plaintiff to standing and walking no more than fifteen minutes at a time and two hours per day – the VE identified several sedentary jobs that could be performed.

[4]While the Court of Appeals' "preferred practice" is for the ALJ to cite Polaski as the legal source for the factors, e.g., Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007), no case holds the Commissioner's decision is reversible simply because the regulations and rulings are cited and Polaski is not.

discuss each Polaski factor. E.g., Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013). The Court discerns no reversible error.

## D. Vocational Expert's Testimony

Plaintiff's final argument contends the ALJ erred in relying on the VE's testimony because it conflicted with the Dictionary of Occupational Titles ("DOT"). After being presented with a hypothetical incorporating the RFC found by the ALJ, the VE testified Plaintiff could perform the jobs of kitchen helper, patient transporter, and cook's helper. Plaintiff has identified discrepancies between the DOT listing for these positions and the RFC: specifically,

- the kitchen helper position requires frequent stooping, crouching and exposure to extreme heat, and wet or humid conditions, as well as occasional exposure to extreme cold
- the cook's helper position requires occasional exposure to extreme heat and occasional exposure to other environmental conditions.

The Court discerns no basis for reversal. First, Plaintiff's argument does not affect the VE's testimony that Plaintiff could perform the work of a patient transporter. Second, in response to an even more limited RFC, the VE testified Plaintiff could perform various sedentary jobs, including: call-out operator, food/beverage order clerk, and surveillance system monitor. Plaintiff's argument does not affect these jobs. Finally, the DOT is not a list of job requirements and should not be treated as such. E.g., Moore v. Astrue, 623 F.3d 599, 604-05 (8th Cir. 2010) (quoting Page v. Astrue, 484 F.3d 1040, 1045 (8th Cir. 2007)).

Plaintiff's argument also seems to claim the hypothetical question does not properly incorporate the ALJ's findings. He compares the hypothetical question, which said Plaintiff needed to avoid "concentrated" exposure to heat and cold, to the ALJ's written opinion, which says Plaintiff needs to avoid "extreme" heat and cold. The Court is not sure what the difference is. In any event, this argument has no effect on the patient transporter position or any of the sedentary positions.

7

## III. CONCLUSION

The ALJ's final decision is affirmed.

IT IS SO ORDERED.

DATE: January 9, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT